IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NANCY CRISTINE WILSON,

    Plaintiff,

      v.

ROBERT GATES, Secretary,
United States Department of Defense,

    Defendant.

Civil Action No.: RDB-09-1074

* * * * * * * * * * * * *

## **MEMORANDUM OPINION**

Plaintiff Nancy Cristine Wilson ("Plaintiff" or "Wilson") has brought this employment discrimination claim against Robert M. Gates ("Defendant"), the Secretary of the United States Department of Defense, her former employer. Plaintiff alleges that she was subjected to racial discrimination, a racially hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Pending before this Court is Defendant's Motion to Dismiss/Motion for Summary Judgment (Paper No. 15). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, Defendant's motion is GRANTED and summary judgment is entered in favor of Defendant.

## **BACKGROUND**

The facts are viewed in a light most favorable to the Plaintiff, as the non-moving party. *See Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiff Nancy Cristine Wilson, a Caucasian female, commenced civilian employment with the Defense Intelligence Agency ("DIA") at Fort Meade, Maryland, on October 31, 2005. Pl.'s Summary of

Facts ("SUF") ¶ 1. Wilson served as a Financial Resource Manager in the Disbursing Office and performed the functions of a cashier. *Id.* During the relevant time period, Wilson worked in a small office alongside her first-line supervisor, Captain Camilla Swain ("CPT Swain"), and her co-worker, Sergeant Melissa D. Schmidt ("SGT Schmidt"), both of whom are African-Americans. *Id.* ¶ 6. Wilson's second-line supervisor was Lieutenant Colonel Daniel R. Heinzelman ("LTC Heinzelman"), a Caucasian man. *Id.*

During the first 15 months of her employment, Wilson enjoyed a positive and cordial working relationship with CPT Swain. Def.'s Ex. 3, at 37-40. The Deputy Chief of the Financial Management Division, Carol Battle ("Deputy Battle"), stated that Wilson and CPT Swain were like "two peas in a pod" for "about a year or so." Def.'s Ex. 3, at 79. LTC Heinzelman stated that prior to January of 2007, Wilson and CPT Swain "acted like sisters . . . loving sisters." Def.'s Ex. 3, at 91.

However, in late 2006 and early 2007, the workplace environment in the Disbursing Office began to deteriorate as the relationship between Wilson and CPT Swain became strained. Def.'s Ex. 3, at 37-40. Wilson notes that these changes began to occur soon after SGT Schmidt began work in the office in October of 2006. Pl.'s SUF ¶¶ 9-12. Also around this time, a new paying exam chief voiced concerns about the close relationship between Wilson and Richard Foreman, the chief of vendor pay. The paying exam chief stated that this relationship increased the potential for fraudulent transactions and was not beneficial for internal controls. Def.'s Ex. 3, at 40-41. Wilson noted that the "incident" with the new paying exam chief "coincided with [CPT Swain's] whole change in behavior." *Id.* at 40. Finally, Wilson stated that upper management had advised CPT Swain "to act more as the manager" and to not be too close to her "subordinates." *Id.* at 38.

Wilson claims that in early 2007, she began to be subjected to unfair treatment, as CPT Swain repeatedly questioned her arrival and departure times and forced her to perform a disproportionate amount of work, including certain menial tasks, such as bank and post office runs. Pl.'s SUF ¶¶ 16-17. In addition, Wilson notes that CPT Swain unfairly denied her request for a temporary volunteer deployment in Iraq, despite the fact that her request had already been approved by LTC Heinzelman. *Id.* ¶ 28. SGT Schmidt, on the other hand, was allegedly spared such poor treatment, as she was never chastised for being late to work, and was not expected to conduct supplementary tasks. *Id.* ¶¶ 17, 23. After SGT Schmidt became close friends with CPT Swain she allegedly began to receive certain benefits, such as extended lunch breaks, that were denied to Wilson. *Id.* ¶ 16.

On May 22, 2007, an incident occurred between Wilson and CPT Swain over the manner in which Wilson was recording her timesheets. Def.'s Ex. 2, at 69. CPT Swain informed Wilson that additional time could not be recorded on her timesheet and that overtime needed to be pre-approved. *Id.* CPT Swain claimed that Wilson responded belligerently to her instructions, and began yelling and throwing vouchers on her desk. *Id.* Later that same day, Wilson and CPT Swain met with LTC Heinzelman and Deputy Battles to discuss the incident, and Wilson became "irate" and acted in a "very disrespectful" manner. Def.'s Ex. 3, at 64. For her part, Wilson explains that her timesheet errors resulted from an innocent mistake and that she was unaware of the rule against indicating exact arrival and departure times. Pl.'s SUF ¶ 25. In addition, Wilson claims that she acted appropriately at the time and did not yell, scream, or throw anything, and she challenges the veracity of the account of the incident set forth in the Letter of Counseling, which was drafted by CPT Swain. *Id.* ¶¶ 22, 29.

On June 29, 2007, three days after she received the Letter of Counseling, Wilson initiated contact with an equal employment opportunity ("EEO") counselor, and filed a complaint alleging racial discrimination and a hostile work environment. Pl.'s SUF ¶ 30; Def.'s Ex. 2, at 17-20. Soon after she filed her initial complaint, LTC Heinzelman temporarily reassigned Wilson to the DIA's Travel Section in order to assuage tensions between Wilson and CPT Swain. Def.'s Ex. 2, at 19. Wilson subsequently received a Notice of Right to File a Formal Complaint, which she signed on October 2, 2007. *Id.* at 49-50.

Another incident occurred between Wilson and CPT Swain on September 24, 2007, when the two encountered each other in an office hallway. Defendant claims that Wilson bumped into CPT Swain and failed to apologize for the contact. Def.'s Ex. 1, at 1. CPT Swain and another witness reported that Wilson's conduct appeared to be deliberate. *Id.*; Def.'s Ex. 3, at 84. Wilson, however, disputes this recollection of the event, and claims that she did not make contact with CPT Swain in the hallway. Pl.'s SUF ¶ 38; Pl.'s Exs. A and G.

Soon after the hallway incident, Wilson was placed on administrative leave, and on October 19, 2007, the Human Resources Office approved Wilson's termination, which was made effective on October 26, 2007. Def.'s Ex. 1, at 1-2; Def's Ex. 2, at 170

Wilson filed a formal Complaint of Discrimination with the EEO on October 12, 2007. Wilson indicated that her complaint was based upon "race" and "retaliation," and stated that the "supervisor and the Deputy, Finance Management Officer (Deputy Battles) engaged in harassing behavior towards me thereby causing a hostile work environment." Pl.'s SUF ¶ 41; Pl.'s Ex. F.

On June 30, 2008, the Investigation and Resolution Division of the Department of Defense Civilian Personnel Management Service, held a fact-finding investigative conference, at which Wilson, Deputy Battles and LTC Heinzelman testified. Pl.'s SUF ¶ 45; Def.'s Ex. 3.

4

Wilson received the Agency's Report of Investigation in January of 2008, and she requested a hearing before an EEOC Administrative Judge on September 5, 2008. Def.'s Ex. 2, at 35; Def.'s Ex. 4.

On April 27, 2009, Wilson timely filed the present Complaint in this Court.[1] On May 6, 2009, the EEOC dismissed Wilson's administrative complaint due to the pendency of this lawsuit.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). A complaint must meet the "simplified pleading standard" of Rule 8(a)(2), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Although Rule 8(a)(2) requires only a "short and plain statement," a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Thus, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

---

[1] The parties concede that Wilson filed her complaint more than 180 days after the filing of her EEO complaint and that no final action had been taken by that time. 42 U.S.C. 2000e-16(c).

The parties to the present action have attached a series of exhibits to their briefs. Because this Court has considered these submissions that are outside of the pleadings, Defendants' pending motion is ultimately treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b) & (c); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I. Exhaustion of Administrative Remedies

Defendant first contends that Wilson's discrimination claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. Defendant construes Wilson's formal Complaint of Discrimination, filed with the EEO on October 12, 2007, as only alleging hostile work environment and retaliation claims. Defendant notes that Wilson's subsequent efforts to amend her administrative complaint only addressed her retaliation claim and that she never sought to incorporate a claim of racial discrimination.[2]

To secure standing under Title VII, a plaintiff bringing suit must exhaust applicable administrative remedies. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The U.S. Court of Appeals for the Fourth Circuit has stated that with respect to a court's determination of the parameters of a Title VII lawsuit:

---

[2] On November 13, 2007, Wilson contacted EEO counselor, Sonya Smallwood, to obtain permission to include a retaliation claim in her complaint. Pl.'s SUF ¶ 42. Smallwood informed Wilson that the retaliation claim was already included in her original complaint and that no amendment was necessary. *Id.* at ¶ 43; Pl.'s Ex. E.

> The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.

*Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) (citations omitted). Therefore a plaintiff is barred from pursuing claims set forth in Title VII complaint that were not previously subjected to administrative investigation. *See Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (noting that "the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination").

In her formal Complaint of Discrimination, which was filed with the EEO on October 12, 2007, Wilson checked the boxes for "race" and "retaliation," and stated in the comment section that CPT Swain and Deputy Battles had "engaged in harassing behavior towards me thereby causing a hostile work environment." Pl.'s Ex. F. In a report, dated October 16, 2007, the EEO counselor summarized Wilson's complaint as alleging "discrimination on the basis of race when beginning in January 2007, her supervisor and the Deputy, Financial Management Division, engaged in harassing behavior towards her, thereby, causing a hostile work environment." Def.'s Ex. 2, at 17. Additionally, in the Department of Defense's Report of Investigation, Wilson's administrative complaint is deemed to have alleged "discrimination . . . based on race (white) and reprisal . . . [and] a hostile work environment . . . ." Def.'s Ex. 2, at 4. Thus, it is clear that the administrative investigation in this case was sufficiently broad and addressed the claims of racial discrimination, retaliation, and hostile work environment. Defendant cannot legitimately argue that it lacked notice of the nature and scope of Wilson's claims under Title

VII. Accordingly, Wilson's claim of racial discrimination in Count One of her Complaint was properly exhausted and must be assessed on its merits.

## II.     Discrimination and Retaliation Claims

Title VII of the Civil Rights Act of 1964, provides that "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In her two-count Complaint, Wilson has alleged that she was unlawfully terminated from her employment on the basis of her race and in retaliation for her complaints of racial discrimination.

In a Title VII case such as this, where the record contains no direct evidence of discrimination or retaliation, plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 281 n.1 (4th Cir. 2000) (noting that the "*McDonnell Douglas* framework applicable to claims of race discrimination applies to retaliation claims as well) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998)). Under this framework, the plaintiff must first make out a *prima facie* case of discrimination[3] and retaliation.[4] If a *prima facie* case is established, the burden of production shifts to the defendant

---

[3] To make out a *prima facie* case of discrimination under the *McDonnell Douglas* scheme, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was performing her job duties at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) her position was filled by a similarly qualified person outside of the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)

[4] To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Plaintiff must prove that (1) she engaged in a protected activity; (2) the defendant took an adverse employment action against her; and (3) a causal nexus exists between the protected activity and the adverse employment action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998).

to offer a legitimate, non-discriminatory reason for its adverse employment action. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). If the employer fulfills this reciprocal duty, the burden reverts back to the plaintiff to establish that the defendant's proffered reason is pretextual and that her termination was instead racially motivated. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-8 (1993).

For purposes of ruling on the instant motion for summary judgment, this Court assumes, *arguendo*, that Wilson has satisfactorily made a *prima facie* case of race discrimination. In response, Defendant contends that Wilson's discharge was inspired by "her pattern of disrespectful and unprofessional conduct." Def.'s Mot. Summ. J. at 12. Defendant notes that when CPT Swain addressed the issue of timesheets Wilson responded in an abrasive and unprofessional manner by yelling and by throwing items on her desk. Def.'s Ex. 1, at 1-2, 4, 6, 12-15; Def.'s Ex. 2, at 69; Def.'s Ex. 3, at 63-65, 88, 92. In addition, Defendant points to the incident in which Wilson appeared to intentionally bump into CPT Swain in the office hallway without apologizing. Def.'s Ex. 1, at 1-2, 6, 8, 9; Def.'s Ex. 3, at 84.

This Court finds that Defendant has satisfied its burden of production in claiming that Wilson was terminated for a legitimate and non-discriminatory reason. Accordingly, the burden shifts back to Wilson to demonstrate, by a preponderance of the evidence, that Defendant's articulated reason is pretextual, and that the true reason for her discharge was racial discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000). Courts have emphasized that a plaintiff's "burden to demonstrate pretext 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Wilson counters that she never conducted herself in an inappropriate manner during her encounters with CPT Swain. She claims (without any citation to the record) that her faulty timesheets resulted from a simple misunderstanding, and that she never yelled, screamed, or threw anything when CPT Swain approached her. Pl.'s SUF ¶ 25. As for the hallway incident, Wilson denies that she ever made contact with CPT Swain, and she claims that CPT Swain never reacted as if she had been bumped. *Id.* ¶ 38; Pl.'s Ex. A, at ¶¶ 2-3. In addition, Wilson contends that she satisfactorily fulfilled her duties as an employee but was nevertheless repeatedly subjected to rude and unfair treatment. For example, she claims that she was tasked to complete a disproportionate amount of work, scrutinized regarding her daily arrival and departure times, and that her volunteer request for deployment was initially denied. Pl.'s Opp. at 23.

Wilson cannot advance her case merely by disputing the Defendant's account of her prior confrontations with CPT Swain. LTC Heinzelman proposed that Wilson be removed after he received a report containing witness accounts of the hallway incident. Def.'s Ex. 3, at 84-85. Even if Wilson could show that the report LTC Heinzelman received was incorrect, such an isolated showing would not militate for a finding that LTC Heinzelman's reasons for proposing termination were pretextual. With respect to the pretext inquiry, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted). In addition, Wilson cannot support a showing of pretext on the basis of claims that CPT Swain subjected her to a pattern of unfair treatment and was generally mean-spirited and unfriendly to her. Title VII only prohibits discrimination on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1); the statute does not establish a "general civility code for the American workplace." *Oncale v. Sundowner*

11

*Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *see also E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) ("complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII") (quotations and citations omitted).

At bottom, Wilson's case is undermined by the fact that she has failed to persuasively argue, let alone establish, that her termination was ultimately due to a separate, racially-motivated reason. *See Reeves*, 530 U.S. at 153 ("the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination"). Wilson has not pointed to any evidence in the record that would support the inference that Wilson was the victim of any race-based animus—a fundamental shortcoming that cannot be remedied by repeated conclusory allegations of prejudice. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) ("a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action"). Wilson's claim that her supervisors were motivated by a discriminatory purpose appears to be grounded in nothing more than her subjective belief. When asked to explain why she believed CPT Swain suddenly developed a discriminatory animus in January of 2007, Wilson responded: "I don't know what else to base it on." Def.'s Ex. 3, at 40. The *McDonnell Douglas* test was specifically designed to weed out claims based on rank speculation and personal surmise. *Olliff v. Potter*, 2008 U.S. Dist. LEXIS 84402, at *12 (E.D. Va. Oct. 21, 2008) ("[t]o raise a reasonable inference of unlawful discrimination, [a plaintiff] must provide more than speculative evidence, generalities, or gut feelings").

Furthermore, Wilson's conjecture of racial discrimination appears implausible in view of the circumstances of this case. Wilson noted that her relationship with CPT Swain began to sour after CPT Swain had been warned about being too friendly with Wilson and about her need to "act more as the manager." Def.'s Ex. 3, at 38. Therefore, presumably CPT Swain's subsequent poor treatment of Wilson was inspired, not by any unprecedented racist feelings, but instead by her concern to assure her supervisors that she was not partial to Wilson.

Finally, no inference of racial discrimination may be drawn by the simple fact that CPT Swain singled out Wilson for mistreatment, while she spared her black peers similar harsh treatment. This Court is wary of "transmut[ing] . . . ordinary workplace disagreements between individuals of different races into actionable race discrimination." *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000). As the Fourth Circuit has explained:

> [Employment disputes] are an inevitable by-product of the rough edges and foibles that individuals bring to the table of their interactions. Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient evidence is required to transform an ordinary conflict [in the employment setting] into an actionable claim of discrimination.

*Id.* at 282.

Defendant has explained that Wilson was terminated because of her insubordinate and unprofessional behavior. Due to her inability to present evidence of racial animus that could rebut this justification as pretextual, Wilson's claims of racial discrimination and retaliation fail as a matter of law. *See Lightener v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) ("The *McDonnell Douglas* framework does not transform all instances of disparate treatment into unlawful discrimination. The framework is a means by which plaintiffs can use circumstantial evidence to create an inference of discrimination.").

### III. Hostile Work Environment Claim

13

To establish a hostile work environment claim, a plaintiff must prove: (1) unwelcome conduct; (2) based on her race; (3) sufficiently severe or pervasive to alter the conditions of employment thereby creating a hostile work environment; and (4) some basis for imputing liability to the employer. *Royal v. Potter*, 416 F. Supp. 2d 442, 446 (4th Cir. 2006). Courts assess the totality of the circumstances in determining whether an environment is "hostile" or "abusive" and they may take heed of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

To the extent that Wilson has asserted a hostile work environment claim,[5] this Court finds that it cannot be supported by the evidence in the record. As noted above, Wilson cannot point to any evidence in the record that would support an inference that she was unfairly treated on account of her race. In addition, even after viewing the record in a light most favorable to Wilson, she cannot show that the treatment she received was sufficiently pervasive or severe to qualify as a hostile work environment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss/Motion for Summary Judgment (Paper No. 15) is GRANTED. A separate Order follows.

Date : June 29, 2010　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　Richard D. Bennett
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] Although Wilson alluded to a hostile work environment in her EEO charge and in her briefs in opposition to summary judgment, such a claim is absent from her Complaint, which only alleges discriminatory discharge and retaliatory discharge. Nevertheless, this Court assumes for purposes of this decision that Wilson has properly asserted a hostile work environment claim.